Robert COLTON, Plaintiff,

v.

John B. SWAIN et al., Defendants and Third-Party Plaintiffs-Appellees,

v.

PACIFIC INDEMNITY CO., a corporation, Third-Party Defendant-Appellant.

No. 74–1572.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1975.

Decided Dec. 17, 1975.

ance policy covers actions brought under 42 U.S.C. § 1983 and, even if it should, does the inclusion of a no-action clause and a no-impleader/joinder clause bar a third-party action to determine the extent of coverage prior to a judgment of liability against the insured? The district court denied the insurer's motion to dismiss the third-party complaint, holding that the action was appropriate under Rule 14 of the Federal Rules of Civil Procedure, and granted the insureds' motion for a summary judgment on the question of the company's liability for section 1983 violations.[1]

The present controversy arose out of an action filed against the third-party plaintiffs, sheriff's deputies in DuPage County, Illinois at the time of the incident in question, by Robert Colton who alleged that the deputies violated 42 U.S.C. § 1983 and the Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution. The defendant-deputies filed their third-party complaint against Pacific Indemnity Company, their insured, after it had notified them that it would deny coverage on the grounds that section 1983 violations are not covered by the policy and that Colton's complaint in the principal action failed to state any other cause of action which was within the provisions of the policy. There is no dispute that the policy was in effect at the time of the alleged incident which is the basis of Colton's suit.

Jay S. Judge and James R. Schirott, Park Ridge, Ill., for appellant.

David P. Schippers, Chicago, Ill., John J. Bowman, State's Atty., and Malcolm F. Smith, Asst. State's Atty., Wheaton, Ill., for appellees.

Before CASTLE, Senior Circuit Judge, and SWYGERT and PELL, Circuit Judges.

SWYGERT, Circuit Judge.

There are two questions presented on this appeal: whether a liability insur-

I

We must first consider whether the third-party action is barred at this time. Pacific Indemnity asserts that there is no rule of substantive law which gives the defendant-deputies the right to bring an action to define the company's liability under the policy and to require it to defend them prior to judgment against them in the suit filed by Colton. A resolution of this issue must precede a consideration of the company's contention that the policy does not anticipate cover-

1. *Colton v. Swain*, 358 F.Supp. 859 (N.D.Ill. 1973).

age for a claim under section 1983. If the district court was incorrect in its conclusion that the impleader was proper, we need not reach the coverage question.

Pacific Indemnity asserts that no action can be maintained against it at this time because no final judgment has been rendered against the insured. It argues that this result is compelled by both the provisions of the policy and by the law and public policy of the state with the most relevant contacts with the contract in question. The essence of its argument is that Rule 14 is procedural in nature and may not be used to "abridge, enlarge or modify" the substantive rights of any litigant. 3 J. Moore, Federal Practice ¶ 14.03[1], and cases cited therein. Pacific Indemnity argues that the substantive law to be applied is that established by the contract in question, as well as by virtue of Illinois law which prohibits direct actions (and by implication, impleader) until a final judgment has been entered against a person claiming the right to indemnity under an insurance policy which contains a no-action clause.

A

The insurance policy in the instant case contains a no-action clause and a no-impleader/joinder clause.[2] Such clauses are directly opposed to the policies underlying Rule 14. That rule is designed to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted. The rule guarantees consistent results, saves the time and cost involved in the needless repetition of evidence at a subsequent trial, and prevents the defendant

in the original action from being handicapped by the time which may elapse between a judgment against him and a judgment in his favor against the insurance company. *Jordan v. Stevens,* 7 F.R.D. 140 (1945). As *Jordan* points out, the purposes served by the rule reflect the public policy against costly and unnecessary adjudications, and private contractual arrangements between individuals should not circumvent the policy of the rule.

B

Pacific Indemnity also contends that the third-party complaint should have been dismissed because the law and public policy of Illinois mandate that result. Pacific Indemnity's position is that when a policy contains a no-action clause the substantive law of Illinois grants it the right to be free of suit until a final judgment has been rendered in the principal action against its insured. Thus it attempts to characterize the question of the propriety of impleader as substantive rather than procedural under Rule 14. The company argues that if there were in fact a substantive right under Illinois law barring impleader, Rule 14 could not be used to circumvent that right.

The defendant-deputies on the other hand urge that the question of impleader be considered independent of the substantive law of the State of Illinois. The district judge agreed and listed three alternative bases for allowing impleader:

[t]he Illinois prohibition against direct action against an insurer is not a bar to a third party complaint under Rule 14. Since the original complaint alleges a federal cause of action based on violations of a federal statute, the

---

2. The pertinent provisions of the policy are:

 No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after the actual trial or by written agreement of the insured, the claimant and the company.

 \* \* \* \* \* \*

 No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative.

third party complaint is ancillary to the primary claim and not necessarily dependent on state law or policy for its determination. Further, federal courts have allowed third party complaints under Rule 14 regardless of state policy based on the federal procedural policy of efficiency in litigation. Federal courts have generally allowed third party complaints against insurers in actions brought under federal question jurisdiction. *Colton v. Swain,* 358 F.Supp. 859, 862–63 (N.D.Ill.1973). (citations omitted.)

■ The first basis, that the principal action was founded on federal question jurisdiction, is inappropriate. Although jurisdiction in third-party actions under Rule 14 is ordinarily considered ancillary to the principal action, policies which mandate the application of state law in a diversity case (*see Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny), apply with equal validity to the impleader of an insurance company under Rule 14. Here, the controversy between the third-party defendant-deputies and the insurance company is one which arises in contract. An insured should not be able to avoid the state law limiting his contractual rights by impleading an insurance company merely because a suit against him is fortuitously based on federal question jurisdiction rather than on diversity of citizenship. *Cf. Kennedy v. Pennsylvania R. R. Co.,* 282 F.2d 705, 709 (3d Cir. 1960). As expressed by the Second Circuit in connection with a choice of law question in a case involving trademark infringement:

[i]t is the *source* of the right sued upon, and not the ground on which federal jurisdiction is founded, which determines the governing law. *Maternally Yours, Inc. v. Your Maternity Shop,* 234 F.2d 538, 540 n. 1 (2d Cir. 1956). *See also Sargent v. Genesco, Inc.,* 337 F.Supp. 1244 (M.D.Fld.1972), 3 J. Moore, Federal Practice, Vol. 1A ` § 305[3] (2d ed. 1974).

The source of the contractual right to indemnity invoked in the third-party complaint here is the law of Illinois, the state in which the contract was formed, the insured reside, and the incident which gave rise to the action took place. *Hartliep Transit Co. v. Central Mut. Ins. Co. of Chicago,* 288 Ill.App. 140, 5 N.E.2d 879 (1936); *Gray v. Pennsylvania Mut. Life Ins. Co. of Philadelphia,* 5 Ill.App.2d 541, 126 N.E.2d 409 (1955).

■ The district judge also noted that third-party complaints have been allowed under Rule 14 without regard to state policy. This is true when the state policy refers only to procedural matters and the third-party action merely alters the time at which the action is initiated. Accordingly, the expedition of a claim based on state substantive law is within the power of a federal court employing Rule 14. The language of the rule itself allows such an interpretation:

[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who *is or may be liable* to him for all or part of the plaintiff's claim against him. (emphasis added.)

This acceleration of claim theory is not applicable, however, given the posture in which Pacific Indemnity has presented its objections, based as they are on state substantive law. Pacific Indemnity argues that it was granted a right which cannot be impaired by federal rules of procedure. Its argument is stated thus:

[I]t is clear that one may not use a procedural rule such as Rule 14 to carve out an exception to a substantive rule that the "no action" clause bars a Third Party Action by the insured against the insurer.

■ If there is no substantive right granted under state law to the defendant-deputies impleader is improper. If, in fact, there is a substantive right guaranteed the company to be free of suit, the procedure would be inappropriate. Rule 14 may control the timing of a suit grounded in substantive law, but may not be used to create a right of action.

Such a right depends upon the existence of a state-created liability. *General Dynamics Corp. v. Adams,* 340 F.2d 271 (5th Cir. 1965); *American Zinc Co. of Ill. v. H. H. Hall Constr. Co.,* 21 F.R.D. 190, 191–92 (E.D.Ill.1957).

The district judge also referred to federal question cases in which impleader of an insurance company had been allowed. These cases, however, were ones in which the United States was the defendant in the principal action. *Taggert v. United States,* 262 F.Supp. 572 (D.C.Pa. 1967); *Barker v. United States,* 233 F.Supp. 455 (D.C.Ga.1964); *Nistendirk v. United States,* 225 F.Supp. 884 (D.C.Mo. 1964). This distinction is sufficient reason for applying more generalized principles of contract law in those cases while in suits between private individuals looking to the law of the state. The fact that the United States is a party to the contract is notice to the insurer that certain conditions may apply. *Cf.* 3 J. Moore, Federal Practice ¶ 14.29. On the other hand, there is no compelling need when the insured is a private citizen to apply federal law even if the principal suit is based on federal question jurisdiction, and the insurer should not be disadvantaged in its contractual rights because of the jurisdictional basis of the case against its insured.

From the foregoing analysis, we are left with the conclusion that we must look to the law of Illinois to ascertain if its substantive law bars the impleader of an insurer under these circumstances.

### C

Pacific Indemnity's assertion that impleader is barred under Illinois law is

derived from that state's policy prohibiting direct actions against insurance carriers. It is argued that allowing a third-party action has the same effect as allowing a direct action: there is decisional authority tending to support this position. *American Zinc Co. of Ill. v. H. H. Hall Constr. Co., supra.* The state policy against direct actions is not codified in any specific legislation, but the Illinois Supreme Court has found a "legislative directive" in the admonition in the Illinois Civil Practice Act[3] that: "nothing herein applies to liability insurers or creates any substantive right to contribution among [joint] tortfeasors or against any insurer or other person which has not heretofore existed." The court determined in *Marchlik v. Coronet Ins. Co.,* 40 Ill.2d 327, 239 N.E.2d 799 (1968), that such actions are against the public policy of the state.

This determination does not, however, compel the result that Pacific Indemnity seeks to have this court reach. After consulting Illinois decisional authority, we find we need not decide if the company's argument against impleader, derived as it is from the state policy against direct actions, is valid and presents sufficient state substantive considerations to mandate that the efficiency considerations of Rule 14 be subrogated to the prohibition. When, as here, there has been a refusal to defend by the insurer an action may be maintained by the insured.[4] Illinois courts have held the obligation to defend to be broader than the obligation to indemnify:

The duty to defend is considered broader than the duty to pay. *All-*

---

3. Ill.Rev.Stat.1967, ch. 110, § 25(2).

4. The policy here in Section "E" provides that if a cause of action arises under that section then the company is obligated to defend:

[I]f such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such

personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

For a description of the relevant offenses see Section II of this opinion, *infra,* p. 11.

*state Insurance Co. v. Gleason,* 50 Ill. App.2d 207, 214, 200 N.E.2d 383; *McFayden v. North River Ins. Co.,* 62 Ill.App.2d 164, 209 N.E.2d 833. *McFayden* also states the rule that the insurer's duty to defend is "predicated upon the allegations in the complaint * * * and when such allegations state facts which bring the case within, or potentially within, the coverage of the policy, the insurer is from this time on unjustified in not defending the insured." *Sprayregen v. American Indemnity Co.,* 105 Ill.App.2d 318, 325, 245 N.E.2d 556, 560 (1969).

This is so even if there is a no-action clause in the contract. As the state Supreme Court noted in 1933:

> [a no-action clause] must be construed in connection with the rest of the contract, particularly that part which obligated [the company to defend the insured] against any suit to enforce a claim. The policy reserved to the exchange full control over the defense of any action, and in consideration thereof it agreed to defend any action at its own cost. The insurer agreed here, as did the insurer in *Ravenswood Hospital v. Casualty Co.,* 280 Ill. 103, 117 N.E. 485, to defend a suit at its own cost. We held in that case that when the injury happened the liability arose. Consequently the obligation arose here to defend [the insured] in the trial court. This burden the exchange refused to assume, disclaiming liability under the policy. On account of that rescission the exchange cannot now complain that the suit against it is premature. *Scott v. Inter-Insurance Exchange,* 352 Ill. 572, 186 N.E. 176, 179 (1933).

If the insurer refuses to defend, it is clear under Illinois law that it cannot subsequently insist that the policy provisions be applied against the insured:

> The prior breach by the insurer of its promise to defend the insured estops the insurer from insisting that the insured be bound by the coverage provision of the policy. The insurer's duty to defend arose when it appeared from the allegations in the personal injury complaint that the injury was within coverage of the policy. Later information pointing to a contrary conclusion does not relieve the insurer of this duty to defend. The duty to defend is considered broader than this duty to pay. *McFayden v. North River Ins. Co., supra,* 62 Ill.App.2d at 170, 209 N.E.2d [833], at 836, *citing Goldberg v. Lumber Mut. Casualty Co.,* 297 N.Y. 148, 77 N.E.2d 131 (1947). *See also Sims v. Illinois Nat. Cas. Co.,* 43 Ill. App.2d 184, 193 N.E.2d 123 (1963); *Kinnan v. Charles B. Hurst Co.,* 317 Ill. 251, 148 N.E. 12 (1925); *Brodek v. Indemnity Ins. Co.,* 292 Ill.App. 363, 11 N.E.2d 228 (1937).

If there appears to be a potential for coverage under the policy, it is sufficient to trigger the company's liability to defend. Illinois has adopted the rule pronounced in *Brooklyn & Q. A. O. B. S. Co. v. Security Mutual Ins. Co.,* 27 Misc.2d 401, 208 N.Y.S.2d 259 (1960):

> It is well settled that it is the obligation of the insurer to defend an action brought against its insured where the complaint in that action alleges a state of facts within the coverage of the policy, irrespective of the ultimate liability of the insured. Moreover, even where it appears, as here, that the complaint in such an action does not state facts with sufficient definiteness to clearly bring the case within or without the coverage of the liability policy, the insurer is nonetheless obliged to defend the action if there is, potentially, a case under the complaint within the coverage of the policy; or, stated in other words, where there is doubt as to whether or not the allegations of the complaint in the action against the insured state a cause of action within the coverage of the policy sufficient to compel the insurer to defend the action, such doubt will be resolved in favor of the insured. The fact that the insurer is possessed of information, whether obtained from its insured or from other sources, which may show the claim against the in-

sured to fall outside the coverage of the policy is, in this regard, of no consequence. (citations omitted.) *See McFayden, supra; Sprayregen, supra; Sims, supra.*

It is apparent then that Pacific Indemnity's duty to defend under Illinois law arose with the filing by Colton of a complaint which stated allegations sufficient to notify the company that the tort complained of was potentially within the coverage of its policy. Even if Pacific Indemnity's argument that the substantive law of Illinois bars impleader against it might have merit in another context, it is not valid when there has been a refusal to defend.[5]

 We note also that questions of an insurer's duty to defend are ripe for declaratory relief. *Sears, Roebuck & Co. v. Zurich Ins. Co.,* 422 F.2d 587, 589 (7th Cir. 1970). The district court in the instant case has employed the provisions of Rule 14 to consolidate the insured's petition for declaratory relief with the trial of the principal action. This was a proper use of the rule since any substantive right that the company may have acquired under Illinois law by virtue of that state's policy against direct actions was relinquished when there was a refusal to defend.[6]

## II

Having determined that the impleader of the insurance company was not improper, we must finally consider whether the district court erred in granting the summary judgment in favor of the defendant-deputies. The dispute arises because the plaintiff in the original suit filed a section 1983 action while the pertinent coverage provision of the policy provides:

> [t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of
>
> (A) false arrest, detention or imprisonment or malicious prosecution,
>
> . . .

The company contends that in light of this provision, the policy does not encompass the "unique constitutional tort" defined under section 1983.

 The district judge, after an examination of Colton's allegations determined that the plaintiff could have framed his complaint either as a civil rights violation or as a tort action for false arrest, false imprisonment, or mali-

---

**5.** We thus arrive at the same conclusion as the court in *Jordan v. Stevens,* 7 F.R.D. 140, 142 (1942):

> Moreover [a no-action clause], if permitted to become effective, should not operate in this case for the reason that the third-party defendant is alleged to have breached its contract. . . . [i]t has refused to defend the defendants or third-party plaintiffs . . . . Under such circumstances it should not be permitted to interpose contractual provisions of a contract it has repudiated.

But we reach our decision after a consideration of the law of Illinois, the appropriate substantive law to govern impleader under Rule 14.

**6.** We need not decide what the result would be if the third-party plaintiff sought to implead the insurer on the question of liability when the company had fulfilled its obligation under the contract to defend and merely notified the insured that there was a genuine dispute as to ultimate coverage under the policy. In a case where there has been a refusal to defend, the insured is immediately disadvantaged and the cause of action against the insurer under Illinois law exists at that time because the company has breached provisions of its policy. Impleader in this situation serves to prevent prejudice to the insured from the delay between the filing of the action against him and the resolution of the company's liability in a subsequent suit. This result merely accelerates or expedites the presentation of the substantive rights of the parties. *Jeub v. B/G Foods, Inc.,* 2 F.R.D. 238 (D.C.Minn.1942).

For this reason, Pacific Indemnity's additional contention in the instant case that impleader was inappropriate under the rationale of Rule 14 even should it be liable to defend is incorrect. The impleader made it unnecessary to institute an expensive and circuitous declaratory relief action and in this way the purpose of the rule is served.

cious prosecution.[7] We agree with this determination. The fact that the complaint failed specifically to state that the crux of the action was a false arrest, an illegal detention, or a malicious prosecution as might be required under Illinois pleading requirements is not determinative on the question of policy coverage. Under the Federal Rules of Civil Procedure a "notice" pleading is sufficient to state a claim.

■■■ We agree with the district judge that as a matter of law the allegations in the complaint were sufficient to come within the terms set forth in the quoted coverage provision. Whether, as Pacific Indemnity asserts, events sufficient to constitute the common law torts of false arrest or malicious prosecution would fall short of establishing violations of section 1983 under the court's interpretation of that section cannot alter the conclusion in regard to the liability of the company under Colton's complaint. Should Colton fail to establish at trial that his rights were violated under section 1983, the subsequent verdict in favor of the deputies would represent a result of which the company could hardly complain.[8]

■■■ In addition, we note that the nexus between section 1983 violations and the common law has long been recognized. The Civil Rights Act is to be interpreted in light of common law tort liability when applicable. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The common law of Illinois defines the elements for a cause of action for malicious prosecution as:

(1) The commencement or continuance of an original criminal or civil judicial proceeding,

(2) Its legal causation by the Defendant against the Plaintiff who was the Defendant in the original proceedings,

(3) Bona fide termination in favor of the Plaintiff,

(4) The absence of probable cause for such proceedings,

(5) The presence of malice,

(6) Damages resulting therefrom to the Plaintiff. *Freides v. Sani-Mode Mfg. Co.*, 33 Ill.2d 291, 211 N.E.2d 286 (1965).[9]

A common law cause for false arrest in Illinois can be predicated upon the following facts:

(1) Actual intent to restrain the Plaintiff.

(2) Unlawful or illegal restraint of the Plaintiff—this would include an arrest made without a warrant unless a crime was committed in the presence of an officer.

---

7. Colton's complaint alleges among other things that the deputies:

 . . . menaced and threatened the plaintiff with firearms. The defendant John B. Swain, set upon, pushed and pummelled the plaintiff, threw him to the ground and struck him repeatedly with a blackjack. Then each of the defendants kicked, beat, and viciously attacked the plaintiff with their feet and hands inflicting injury to the plaintiff. The plaintiff was then dragged and pushed into the County Jail by the defendants.

 \* \* \* \* \* \*

 The defendant was falsely and without probable cause charged with the following crimes:
 a) criminal damage to property of the County of Du Page;

 b) unlawful possession of a controlled substance; and
 c) obstructing a police officer in the performance of his duties.
 Thereafter the Office of the State's Attorney of Du Page County chose not to prosecute the plaintiff for the first two offenses listed above, and the plaintiff was found not guilty of the third offense and discharged on August 15, 1972.

8. The company is not prejudiced in this event. As explained in Section I(C) of this opinion under state law it has a duty to defend the deputies in this case.

9. Pacific Indemnity admits the Colton complaint alleges numbers (1) and (3), but argues that the allegations fail to address the balance of the required elements.

(3) Restraint against the will of the Plaintiff.

(4) Actual physical restraint of the Plaintiff.

*McKendree v. Christry,* 29 Ill.App.2d 195, 172 N.E.2d 380 (1961).

A reading of the Colton complaint in view of the federal pleading requirements compels the conclusion that the events complained of do sound in the common law torts of malicious prosecution and false arrest. State requirements which dictate the proper form of a complaint in Illinois courts are not controlling in federal actions. Nor does the company's argument that section 1983 violations are statutory provide the basis for a distinction between them and common law torts; the coverage is not limited under the terms of the policy. *Cf. Caplan v. Johnson,* 414 F.2d 615 (5th Cir. 1969).

We are also persuaded by the reasoning of the district judge that the fact that Colton chose to proceed under the Civil Rights Act instead of choosing a common law tort should not operate to inflict a penalty on the insured. The defendants cannot control the form of the action filed against them and it would be unjust to deny them coverage because the plaintiff in the principal action exercised his option to choose a section 1983 cause of action.

The granting of the summary judgment in favor of the third-party plaintiffs is affirmed.