Sullivan
No. 80-204

TOWN OF GOSHEN & a.

v.

GRANGE MUTUAL INSURANCE COMPANY & a.

December 29, 1980

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief), by brief for the plaintiffs.

*Cooper, Hall & Walker*, of Rochester (*Peter A. Handy* on the brief), by brief for the defendants.

PER CURIAM. This case arises out of a petition for declaratory judgment under RSA 491:22 brought by the Town of Goshen, its planning board, and Stanley Williamson, individually and as chairman, against the Grange Mutual Insurance Company and Richard Wentzell. The latter is the plaintiff in a civil rights action under 42 U.S.C. § 1983 pending in the United States District Court for the District of New Hampshire.

The principal issue is whether Grange is obligated to provide coverage to the plaintiffs herein under the personal injury liability coverage endorsement of a public liability policy it issued to the town. The Trial Court (*Johnson*, J.) ordered Grange to defend the town, the planning board and its chairman against the charges made by Wentzell in his complaint in the federal court. We hold that order to be proper and affirm.

Wentzell is the owner of a parcel of land in Goshen referred to as "Sunshine Acres II." Seeking to develop the property, he applied under the prevailing town ordinances for subdivision

approval thereof. His complaint in federal court against the plaintiffs in this petition alleges in part:

"(10) That the defendant Town of Goshen did not want the plaintiff to gain subdivision approval of the above mentioned land because . . . the policy and the custom of the Town . . . was and is to restrict growth and deny any large scale development.

(11) That the defendant Planning Board . . . acted in furtherance and in reliance on the Town . . . policies and for over two years delayed and obfuscated the attempts made by the plaintiff to gain subdivision approval . . . for the purpose of *creating economic hardships* that would destroy the *viability* of the *plaintiff's project.*

(12) That the defendant Stanley Williamson individually and in his official capacity as Chairman of the Planning Board for the Town . . . personally promised the plaintiff that he would see to it that his project was delayed for at least two years.

(13) That the defendant . . . Williamson acting in his official capacity and out of personal vindictiveness for plaintiff contacted various state agencies and officials for the purpose of *instituting administrative proceedings against* the *plaintiff* so as to cause a slow down or halt to the plaintiff's project or to create a reversal of the approvals given by various state agencies for the plaintiff to proceed with his project.

(14) That the *actions* of the *defendants* . . . were wanton, malicious and *oppressive* and have *deprived* the plaintiff of his *ability* to ever *recover* the money, time and other resources that have been invested into the development of Sunshine Acres II and have caused him to endure a loss in excess of Two Million Dollars and to suffer the *taking* of *his property* without just compensation or the due process of law.

(15) That the above . . . set forth . . . an intent on the part of the defendants to *deny* the plaintiff . . . his right to the *free enjoyment* of his *property.* . . ."

(Emphasis added.)

The controversy involved in this petition for a declaratory judgment is based on the terms of the "Personal Injury Liability Insurance Endorsement" attached to a "Public Liability Policy"

issued by the defendant Grange to the Town of Goshen. By this endorsement Grange agrees with the named insured as follows:

"The insurance afforded is only with respect to personal injury arising out of an offense included within such of the following groups of offenses as are indicated by specific premium charge or charges:

| Groups of Offenses | Provisional Premium |
| --- | --- |
| A. False Arrest, Detention or Imprisonment, or Malicious Prosecution | $ Included |
| B. Libel, Slander, Defamation or Violation of Right of Privacy | $ Included |
| C. Wrongful Entry or Eviction or other Invasion of Private Occupancy | $ Included |

This endorsement is not extended to cover police or police department."

The plaintiffs claim that the endorsement provides coverage under its provisions with respect to personal injury arising out of "Malicious Prosecution" and "other Invasion of the Right of Private Occupancy," which they maintain includes invasion of one's right to free enjoyment of his property.

Grange first maintains that there is no coverage under the "Malicious Prosecution" provision, an issue which we do not reach in light of our holding herein.

Grange takes the position that the allegations in the Wentzell complaint do not come within the policy coverage for the "offense" described in the endorsement as "wrongful entry or eviction or other invasion of the right of private occupancy." It points to the absence of allegations of any invasion, intrusion or interference by any person or thing upon the Wentzell land. The trial court ruled that "the right to the private occupancy of land connotes far more than the right to be free merely from physical intrusions." Accordingly, the court found that coverage was provided.

We cannot accept Grange's argument that an appreciable and tangible interference with the physical property itself is necessary to constitute an "invasion of the right of private occupancy." We are of the opinion that the allegations in the complaint would constitute the required "invasion of the right of private occupancy." These allegations include: that the planning board created economic hardships that destroy the viability of the complainant's project, deprived him of his ability to ever recover

the money, time and other resources invested in the development of his property, thus causing him substantial damage, and denied plaintiff's right to the free enjoyment of his property without due process of law.

■ The fact that the underlying federal court action is based upon a statutory claim (42 U.S.C. § 1983) rather than on a direct common-law claim in State court does not relieve Grange of the duty to defend if the policy otherwise insures against the common-law actions that are framed in a section 1983 pleading. *See Colton v. Swain*, 527 F.2d 296, 304–05 (7th Cir. 1975). This is because "[t]he Civil Rights Act is to be interpreted in light of common law tort liability when applicable." *Id.* at 304, *citing Pierson v. Ray*, 386 U.S. 547 (1967). Therefore, "the fact that [Wentzell] chose to proceed under the Civil Rights Act instead of choosing a common law tort should not operate to inflict a penalty on the insured." *See Colton v. Swain, supra* at 305. *Accord, see Caplan v. Johnson*, 414 F.2d 615 (5th Cir. 1969), and *City of Peoria v. Underwriters' at Lloyds' London, Uninc.*, 290 F. Supp. 890 (S.D. Ill. 1968).

Had Grange wished to exclude coverage for invasion of private property when framed in a section 1983 action, it could have done so by explicit language in the policy. *See Colton v. Swain supra; Shea v. United Services Auto. Ass'n*, 120 N.H. 106, 108, 411 A.2d 1118, 1119–20 (1980). In *City Council of Elizabeth v. Fumero*, 143 N.J. Super. 275, 362 A.2d 1279 (1976), a specific exclusion for section 1983 actions limited coverage to common-law theories only, and therefore there was no duty to defend a civil rights action.

In the case at hand, there is no civil rights or section 1983 exclusion. Faced with a lack of definitional clarity as to the scope of coverage, the trial court found that the insurer had not met its burden of proof under RSA 491:22-a. The policy terms are unclear, and therefore the ambiguities created will be construed against the company and in favor of the insured. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 423 A.2d 980 (1980). This result is similar to our conclusion in *Brown v. City of Laconia*, 118 N.H. 376, 379, 386 A.2d 1276, 1278 (1978), that if a snowplow was not to be covered under a "snow removal hazard" the insurer "should have used plainer language in its description of the hazard."

*Affirmed.*

GRIMES, C.J., did not participate; the others concurred.